

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. __17-20163-CR-LENARD(s)__
18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 371
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 2
18 U.S.C. § 982(a)(7)

UNITED STATES OF AMERICA

vs.

YUNESKY FORNARIS,

        Defendant.
_____/

## SUPERSEDING INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Superseding Indictment:

### The Medicare Program

1.    The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320-7b(f).

3. Medicare programs covering different types of benefits were separated into different program "parts." "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound. Payments for home health care medical services were typically made directly to a Medicare-certified HHA or provider based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries.

4. CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS contracted with different private companies to administer the Medicare Part A program throughout different parts of the United States. In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators ("Palmetto"). As administrator, Palmetto was to receive, adjudicate and pay claims submitted by HHA providers under the Part A program for home health claims. Additionally, CMS separately contracted with companies in order to review HHA providers' claims data. CMS first contracted with TriCenturion, a Program Safeguard Contractor. Subsequently, on December 15, 2008, CMS contracted with SafeGuard Services, a Zone Program Integrity Contractor. Both TriCenturion and SafeGuard Services safeguarded the Medicare Trust Fund by reviewing HHA providers' claims for potential fraud, waste, and/or abuse.

## Part A Coverage and Regulations

### Reimbursements

5.   The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits. A patient qualified for home health benefits only if the patient:

a.  was confined to the home, also referred to as homebound;

b.  was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("POC"); and

c.  the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy; the beneficiary was confined to the home; that a POC for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the POC.

### Record Keeping Requirements

6.   Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting the actual treatment of patients to whom services were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

7. Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare were a: (i) P.O.C. that included the physician order, diagnoses, types of services/frequency of visits, prognosis/rehab potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals, and the physician's signature; and (ii) a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services.

8. Additionally, Medicare Part A regulations required HHAs to maintain medical records of every visit made by a nurse, therapist, or home health aide to a patient. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any teaching and the understanding of the patient, and any changes in the patient's physical or emotional condition. The home health aide was required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records were generally created and maintained in the form of "skilled nursing progress notes" and "home health aide notes/observations."

9. Medicare regulations allowed Medicare certified HHAs to subcontract home health care services to nursing companies, therapy staffing services agencies, registries, or groups (nursing groups), which would bill the certified home health agency. The Medicare certified HHA would, in turn, bill Medicare for all services rendered to the patient. The HHA's professional supervision over subcontracted-for services required the same quality controls and supervision as of its own salaried employees.

10. In order to receive Medicare reimbursements, HHAs were required to complete a Provider/Supplier Enrollment Application, also known as Form CMS-855A, as well as provide supporting documentation. HHAs were required to provide truthful and accurate information, including accurately listing the names of all people who have an ownership or security interest in the provider company.

### The Defendant, Relevant Entities and Individuals

11. Elite Home Care, LLC ("Elite") was a Florida corporation that did business in Miami-Dade County, Florida, as a home health agency.

12. JK&N Health Corp. ("JK&N") was a Florida corporation that purported to do business in Miami-Dade County, Florida.

13. Defendant **YUNESKY FORNARIS** was a resident of Miami-Dade County.

14. Individual 1, a resident of Miami-Dade County, had an ownership interest in Elite and was the sole owner, registered agent and officer of JK&N.

15. M.G., a resident of Miami-Dade County, was a Medicare beneficiary.

16. C.V., a resident of Miami-Dade County, was a Medicare beneficiary.

17. P.P., a resident of Miami-Dade County, performed administrative work for Elite and later cashed checks for Fornaris.

18. J.B., a resident of Miami-Dade County, cashed checks for Fornaris.

19. E.P., a resident of Miami-Dade County, performed administrative work for Elite from her home and cashed checks for Fornaris.

## COUNT 1
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1. Paragraphs 1 through 16 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around April of 2010, through in or around July of 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**YUNESKY FORNARIS,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, Individual 1, and others, known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a. to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

b. to knowingly and with the intent to defraud, devise and intend to devise, a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted

by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

3. It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare; and (c) diverting fraud proceeds for the personal use and benefit of themselves and others.

### Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4. **YUNESKY FORNARIS** and his co-conspirators enlisted at least one nominee owner (the "Nominee Owner") to falsely and fraudulently represent him/herself to be the owner of Elite.

5. **YUNESKY FORNARIS** completed and signed portions of Medicare applications and re-certifications on behalf of Elite in which he fraudulently represented to Medicare, among other things, that the Nominee Owner was the actual owner of Elite, and that Elite would comply with the Medicare rules and regulations, including the Federal Anti-Kickback Statute.

6. **YUNESKY FORNARIS** and other co-conspirators caused these false and fraudulent applications to be submitted to Medicare.

7. As a result of the submission of these false and fraudulent application documents by **YUNESKY FORNARIS** and his co-conspirators, including re-certifications, Medicare gave,

and continued to reauthorize, a provider number to Elite, which allowed Elite to submit claims for home health care services purportedly rendered to eligible Medicare beneficiaries.

8. After causing the falsified Medicare applications to be submitted to Medicare, **YUNESKY FORNARIS**, Individual 1, and other co-conspirators paid, and caused to be paid, bribes and kickbacks to Medicare beneficiaries and patient recruiters in exchange for the referral of Medicare beneficiaries to Elite.

9. **YUNESKY FORNARIS** and other co-conspirators caused Elite to submit false and fraudulent claims, via interstate wire, to Medicare for home health services that: (i) were the result of the payment of bribes and kickbacks to patient recruiters in exchange for patient referrals; and (ii) were not medically necessary. **YUNESKY FORNARIS** and other co-conspirators also caused Elite to submit claims to Medicare for home health services while continuing to fraudulently misrepresent the identities of the true owners of Elite.

10. As a result of these false and fraudulent claims, Medicare paid approximately $15 million to Elite.

11. **YUNESKY FORNARIS**, Individual 1, and other co-conspirators used proceeds from the false and fraudulent claims for their own use, the use of others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2 - 3
### Health Care Fraud
### (18 U.S.C. § 1347)

1. Paragraphs 1 through 16 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around April of 2010, through in or around July of 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

8

**YUNESKY FORNARIS,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, that is, the defendant submitted and caused the submission of false and fraudulent claims to Medicare, seeking reimbursement for the cost of various home health services.

### Purpose of the Scheme and Artifice

3. It was the purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare; and (c) diverting fraud proceeds for the personal use and benefit of themselves and others.

### The Scheme and Artifice

4. The allegations contained in paragraphs 4 through 11 of the Manner and Means section of Count 1 of the Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution or Attempted Execution of the Scheme and Artifice

5. On or about the dates set forth as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, **YUNESKY FORNARIS**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully

execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that the defendant caused the submission of false and fraudulent Medicare claims seeking the identified dollar amounts, as further described below:

| Count | Beneficiary | Provider Name | Approximate Claim Date | Medicare Claim Number | Approximate Amount Paid |
|---|---|---|---|---|---|
| 2 | C.V. | Elite | 9/22/12 – 10/31/12 | 21232001700907FLR | $5,671 |
| 3 | M.G. | Elite | 6/11/15 – 7/15/15 | 21522303370607FLR | $4,034 |

In violation of Title 18, United States Code, Sections 1347 and 2.

### COUNT 4
### Conspiracy to Defraud the United States and Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1. Paragraphs 1 through 16 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around April of 2010, through in or around July of 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**YUNESKY FORNARIS,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with Individual 1, each other, and others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a. to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States

10

    Department of Health and Human Services in its administration and oversight of the Medicare program; in violation of Title 18, United States Code, Section 371; and

b.  to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying remuneration, including, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

### Purpose of the Conspiracy

3.  It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) paying kickbacks and bribes for referring Medicare beneficiaries to Elite to serve as patients; and (b) submitting and causing the submission of claims to Medicare for home health services that Elite purportedly provided to those beneficiaries obtained as a result of kickbacks and bribes.

### Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4.  **YUNESKY FORNARIS** paid kickbacks to other co-conspirators, including Individual 1, in return for referring Medicare beneficiaries to Elite for home health services.

5.  **YUNESKY FORNARIS**, Individual 1, and other co-conspirators caused Elite to submit claims to Medicare for home health services purportedly provided to the recruited Medicare beneficiaries.

11

6.      **YUNESKY FORNARIS**, Individual 1, and other co-conspirators caused Medicare to make payments to Elite based upon the claims for home health services submitted on behalf of the recruited Medicare beneficiaries.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in Miami-Dade County, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.      In or around February of 2012, **YUNESKY FORNARIS** caused Elite to submit a Medicare provider re-certification bearing false and fraudulent information regarding, among other things, his ownership of Elite.

2.      On or about March 17, 2014, **YUNESKY FORNARIS** signed check number 15266 on behalf of Elite, from Regions Bank account x2453, made out to JK&N in the amount of approximately $9,340.

3.      On or about April 21, 2014, **YUNESKY FORNARIS** signed check number 15424 on behalf of Elite, from Regions Bank account x2453, made out to JK&N in the amount of approximately $10,445.

4.      On or about May 8, 2014, **YUNESKY FORNARIS** signed check number 15550 on behalf of Elite, from Regions Bank account x2453, made out to JK&N in the amount of approximately $13,540.

5.      On or about July 29, 2014, **YUNESKY FORNARIS** signed check number 15922 on behalf of Elite, from Regions Bank account x2453, made out to JK&N in the amount of approximately $11,541.

6. On or about August 11, 2014, **YUNESKY FORNARIS** signed a Medicare Electronic Data Interchange Enrollment Agreement representing that his title was "administrator," and certifying, among other things, that Elite would submit accurate, complete and truthful claims to Medicare.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 5-7
## Money Laundering
## (18 U.S.C. § 1956(a)(1)(B)(i))

On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**YUNESKY FORNARIS,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that such transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, as set forth below:

| Count | Approximate Date of Payment | Approximate Amount | Description of Transaction |
|---|---|---|---|
| 5 | May 2, 2014 | $2,760 | Transfer of check payable to P.P. from Elite's Regions Bank account ending 2453 |
| 6 | January 29, 2015 | $2,850 | Transfer of check payable to E.P. from Elite Regions Bank account ending 2453 |
| 7 | August 26, 2015 | $4,000 | Transfer of check payable to J.B. from Elite Regions Bank account ending 2453 |

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343; health care fraud, in violation of Title 18, United States Code, Section 1347; and payment of kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b)(2).

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## FORFEITURE
## (18 U.S.C. § 982(a)(7))

1.  The allegations contained in this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **YUNESKY FORNARIS**, has an interest.

2.  Upon conviction of a violation of Title 18, United States Code, Sections 1349, 1347, 371, or 1956(a)(1)(B)(i), as alleged in this Superseding Indictment, the defendant, **YUNESKY FORNARIS**, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense pursuant to Title 18, United States Code, Section 982(a)(7).

3.  The property which is subject to forfeiture includes, but is not limited to, the sum of approximately $15 million, as to **YUNESKY FORNARIS**, which sum represents the gross proceeds of the offenses alleged in the Superseding Indictment.

4.  If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, made applicable by Title 18, United States Code Section 982(b)(1).

A TRUE BILL

F[...]

*[signature]*
BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

*[signature]*
JOSEPH BEEMSTERBOER
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

*[signature]*
LISA H. MILLER
ASSISTANT UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

*[signature]*
ADAM G. YOFFIE
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. | 17-20163-CR-LENARD(s) |
|---|---|---|

vs.

**CERTIFICATE OF TRIAL ATTORNEY***

YUNESKY FORNARIS,

        **Defendant.**
_____/

**Superseding Case Information:**

**Court Division:** (Select One)

| | | | | |
|---|---|---|---|---|
| X | Miami | ___ | Key West | |
| ___ | FTL | ___ | WPB | ___ FTP |

| | | |
|---|---|---|
| New Defendant(s) | Yes ___ | No X |
| Number of New Defendants | ___ | |
| Total number of counts | 7 | |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)    NO
   List language and/or dialect _____

4. This case will take __3-5__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)        (Check only one)

   | | | | | | |
   |---|---|---|---|---|---|
   | I | 0 to 5 days | X | Petty | | |
   | II | 6 to 10 days | ___ | Minor | | |
   | II | 11 to 20 days | ___ | Misdem. | | |
   | IV | 21 to 60 days | ___ | Felony | X | |
   | V | 61 days and over | ___ | | | |

6. Has this case been previously filed in this District Court? (Yes or No)    Yes
   If yes:
   Judge: __Lenard__    Case No. __17-20163__
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No)    No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ___ Yes   X   No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ___ Yes   X   No

                                    _____
                                    ADAM G. YOFFIE
                                    DOJ TRIAL ATTORNEY
                                    Court No. A5502282

*Penalty Sheet(s) attached                                                                                REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**     YUNESKY FORNARIS

**Case No:**     17-20163-CR-LENARD(s)

Count #:   1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

**\*Max Penalty**:     Ten (10) years' imprisonment

Counts #:   2 – 3

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max Penalty**:     Ten (10) years' imprisonment as to each count

Count #:   4

Conspiracy to Defraud the United States and Pay Health Care Kickbacks

Title 18, United States Code, Section 371

**\*Max Penalty:**     Five (5) years' imprisonment

Counts #:   5 – 7

Money Laundering

Title 18, United States Code, Section 1956(a)(1)(B)(i)

**\*Max Penalty:**     Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**